# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) | Case No. _____ |
|  | ) |  |
| UNIFORMED PROFESSIONAL FIRE FIGHTERS ASSOCIATION OF CONNECTICUT, INC. and INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 825, | ) ) ) ) ) ) ) |  |
| Defendants. | ) | November 15, 2019 |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Markel American Insurance Company ("MAIC") brings this Complaint for Declaratory Relief against Defendants Uniformed Professional Fire Fighters Association of Connecticut, Inc. ("UPFFA") and International Association of Fire Fighters, Local 825 ("Local 825"). MAIC makes the following allegations on knowledge, information, and belief.

## NATURE OF THE CLAIM

1. MAIC issued a Union Liability Insurance Policy No. MUL 0014291 02 to International Association of Fire Fighters - Connecticut ("IAFF") for the **Policy Period** of March 4, 2018 to March 4, 2019 (the "Policy").[1] A true and correct copy of the Policy is attached as Exhibit A.

2. UPFFA is an **Insured** under the Policy.

---

[1] Terms in bold are defined terms in the Policy.

3.  UPFFA has been named as a defendant in a lawsuit by Local 825 captioned *Int'l Ass'n of Fire Fighters, Local 825 v. Uniformed Prof'l Fire Fighters Ass'n of Conn., Inc.*, Docket No. HHD-CV-18-6101218-S (Conn. Super. Ct.) (the "Underlying Action").

4.  MAIC seeks a declaration that the Policy does not afford coverage for the Underlying Action.

## THE PARTIES

5.  Plaintiff MAIC is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located in the Commonwealth of Virginia. MAIC is a citizen of Virginia.

6.  Defendant UPFFA is a union organized and existing under the laws of the State of Connecticut, with its principal place of business located in the State of Connecticut. UPFFA is a citizen of Connecticut.

7.  Defendant Local 825 is an unincorporated local union with its principal place of business located in the State of Connecticut. Upon information and belief, Local 825 is a citizen of Connecticut. Local 825 is a party to this action because it is the plaintiff in the Underlying Action and may assert an interest in this lawsuit.

## JURISDICTION AND VENUE

8.  MAIC seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 regarding the parties' rights and obligations for the Underlying Action under the Policy. An actual and justiciable controversy exists between the parties regarding the parties' respective rights, duties, and obligations under the Policy.

9.  The Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between MAIC, on the one hand, and

UPFFA and Local 825, on the other hand.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

      10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the defendants reside in this District and a substantial part of the events giving rise to the claim at issue occurred in this District.

FACTUAL BACKGROUND

**The Policy**

      11.      MAIC issued the Policy to IAFF for the **Policy Period** of March 4, 2018 to March 4, 2019.  Policy (Ex. A), Certificate, Items 2 and 3.

      12.      Subject to all of its terms, conditions, limitations, and exclusions, the Policy's Insuring Agreement provides in relevant part:

> The **Insurer** shall pay on behalf of the **Insured** all **Loss** which the **Insured** becomes legally obligated to pay resulting from any **Claim** first made against the **Insured** during the **Policy Period** . . . for a **Wrongful Act**, **Wrongful Offense** or **Wrongful Employment Practice** and which is subsequently reported to the **Insurer** *within the earlier of*: a) ninety (90) days after such **Claim** is first made against the **Insured** or b) by the end of the **Policy Period** . . . .

Policy (Ex. A), Section I.

      13.      The Policy defines "**Insured**" to mean "the **Union**, and all **Insured Person(s)**, collectively or individually, and any other natural persons or organization designated as an additional **Insured** by **Endorsement** to this policy.  **Insured** does not mean or include any related or affiliated union, organization or entity of the **Insured** unless specifically added as an additional **Insured** by **Endorsement** to the policy."  Policy (Ex. A), Section IX.N.

      14.      The Policy defines "**Union**" to mean "the duly constituted, chartered and recognized entity shown in Item 02 of the **Policy Certificate**.  **Union** does not mean or include subsidiaries or affiliated entities unless added to the policy by **Endorsement**."  Policy (Ex. A),

Section IX.EE.  IAFF is identified in the **Policy Certificate** as the **Union**.  Policy (Ex. A), Certificate, Item 2.

15. By endorsement, the term "**Union**" is amended to include UPFFA.  Policy (Ex. A), Section IX.EE, as amended by Endorsement No. 3.  Coverage for UPFFA is subject to a sub-limit of $1 million and the satisfaction of a $5,000 each **Claim** self-insured retention.  Policy (Ex. A), Endorsement No. 3.

16. The Policy defines "**Claim**" to mean, in relevant part, a "written demand for monetary damages" or a "civil proceeding commenced by the service of a complaint or similar proceeding."  Policy (Ex. A), Section IX.D.1-2.

17. The Policy defines "**Wrongful Act**" to mean "any error or omission or breach of duty committed or alleged to have been committed by the **Union** or any **Insured Person** in the discharge of his or her duties solely in his or her capacity as an **Insured Person** for the **Union**."  Policy (Ex. A), Section IX.GG.  The term includes, but is not limited to, the "failure to provide fair representation of all **Union** members," the "recruitment of new **Union** members," the "mishandling of any **Union** member's grievance," and the "financial management of the **Union**."  *Id.*

18. The Policy provides that the **Insurer** shall not be liable for **Loss** on account of any **Claim** made against an **Insured** based upon, arising from, in consequence of, or in any way related to:

Any **Claim**, which is brought by or on behalf of or in the name or right of:

    a.    Any national or international labor organization which has chartered the **Union**, any subsidiary or any affiliate of the **Union**; or any local labor organization chartered by the **Union**; or

      b.      Any entity chartered by the same national or internal labor organization;

      c.      Any labor organization operating under the same collective bargaining agreement as the **Union**;

      d.      Any **Insured** in any capacity; however, this exclusion shall not apply to any **Claim** for a **Wrongful Employment Practice**.

Policy (Ex. A), Section IV.A.7 (the "Affiliate Exclusion").

19. The Policy provides that the **Insurer** shall not be liable for **Loss** on account of any **Claim** made against an **Insured** based upon, arising from, in consequence of, or in any way related to:

> Any actual or alleged liability of others assumed by the **Insured** under any contract or agreement, either oral or written, except to the extent that the **Insured** would have been liable in the absence of the contract or agreement, or unless the liability arises out of a dispute concerning the terms of a collective bargaining agreement between an employer and the **Insured**.

Policy (Ex. A), Section IV.A.6 (the "Contract Exclusion").

**The Underlying Action**

20. The complaint in the Underlying Action ("Underlying Complaint") was filed on or about March 5, 2018. A true and correct copy of the Underlying Complaint is attached as Exhibit B.

21. According to the Underlying Complaint, in 2006, Local 825 decided to affiliate with UPFFA as a "legislative only" member. Underlying Complaint (Ex. B), ¶ 19. This type of membership allowed Local 825 to vote on UPFFA business involving "legislative issues, political endorsements, PAC fund budget, and distribution of PAC fund donations." Underlying Complaint (Ex. B), ¶ 22.

22. The Underlying Complaint alleges that, on or about January 4, 2016, Local 825 decided to terminate its "legislative only" membership with UPFFA and gave notice to UPFFA. Underlying Complaint (Ex. B), ¶ 2.

23. The Underlying Complaint alleges that, throughout Local 825's legislative-only membership from 2006 to 2016, UPFFA misappropriated Local 825's dues by using the amounts to pay for UPFFA's collective bargaining and other activities on behalf of other UPFFA locals rather than legislative activities on behalf of Local 825. Underlying Complaint (Ex. B), ¶ 5.

24. The Underlying Complaint alleges that at least $96,000 of Local 825's legislative-only dues were misused by UPFFA on non-legislative activities. Underlying Complaint (Ex. B), ¶¶ 36, 39.

25. The Underlying Complaint further alleges that UPFFA improperly attempted to collect dues after the time Local 825 terminated its UPFFA legislative-only membership. The amount of the alleged past-due payments totals approximately $52,816.96. Underlying Complaint (Ex. B), ¶¶ 4, 56.

26. On May 25, 2018, Local 825 filed a revised amended complaint.

27. On August 13, 2018, UPFFA moved to strike the revised amended complaint on the grounds that the complaint failed to add IAFF, which UPFFA contended was a necessary party to the Underlying Action. A true and correct copy of the motion to strike is attached as Exhibit C.

28. The court in the Underlying Action granted the motion on November 9, 2018.

29. On November 13, 2018, Local 825 filed a third amended complaint.

30. On January 6, 2019, Local 825 filed a motion for partial summary judgment. A true and correct copy of the January 6, 2019 motion is attached as Exhibit D.

31. On April 11, 2019, the court in the Underlying Action granted the motion for summary judgment for the reasons stated in an earlier December 10, 2018 temporary restraining order. A true and correct copy of the April 11, 2019 order is attached as Exhibit E. A true and correct copy of the December 10, 2018 order is attached as Exhibit F.

32. In its December 10, 2018 order, the court treated both UPFFA's policy manual and IAFF's bylaws as contracts governing Local 825's right and obligations regarding disaffiliation.

**The Coverage Dispute**

33. On or about March 12, 2018, UPFFA provided MAIC with notice of the Underlying Action.

34. By letter dated April 4, 2018, MAIC advised UPFFA of its determination that there the Affiliate Exclusion and the Contract Exclusion appeared to bar coverage under the Policy for the *Local 825* Action. MAIC continued to reserve its rights, both generally and on these specific grounds. A true and correct copy of MAIC's April 4, 2018 letter is attached as Exhibit G.

35. By letter dated May 1, 2018, UPFFA contested MAIC's decision regarding the denial of coverage. UPFFA asserted that coverage was available because the summons in the *Local 825* Action stated that UPFFA "failed to properly represent [Local 825's] interests as a legislative affiliate, and further states that [UPFFA] misappropriated funds as a legislative affiliate." A true and correct copy of UPFFA's May 1, 2018 letter is attached as Exhibit H.

36. MAIC has maintained open communication with UPFFA to ensure a thorough consideration of the coverage issues, but to date, UPFFA has not provided information that suggests that the Underlying Action is covered under the Policy. By emails dated May 2, 2018,

May 4, 2018, and May 8, 2018, MAIC notified UPFFA that it had reviewed and decided to uphold its original coverage decision.  A true and correct copy of MAIC's May 2, 2018 email is attached as Exhibit I.  A true and correct copy of MAIC's May 4, 2018 email is attached as Exhibit J.  A true and correct copy of MAIC's May 8, 2018 email is attached as Exhibit K.

### COUNT I

### For a Declaration that the Affiliate Exclusion
### Precludes Coverage Under the Policy for the Underlying Action

37.     MAIC realleges and incorporates by reference the allegations in Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38.     No coverage is available under the Policy for any **Claim** made against an **Insured** based upon, arising from, in consequence of, or in any way related to "[a]ny **Claim**, which is brought by or on behalf of or in the name or right of . . . [a]ny national or international labor organization which has chartered the **Union**, any subsidiary or any affiliate of the **Union**; or any local labor organization chartered by the **Union**; or . . . [a]ny entity chartered by the same national or internal labor organization."  Policy (Ex. A), Section IV.A.7.

39.     As explained above, the term "**Union**" is amended by endorsement to include UPFFA.  Policy (Ex. A), Section IX.EE, as amended by Endorsement No. 3.

40.     The Underlying Action is a **Claim** brought by Local 825.  Local 825 is an affiliate of UPFFA, and both Local 825 and UPFFA are chartered by IAFF.

41.     Accordingly, MAIC is entitled to a determination that the Affiliate Exclusion bars coverage under the Policy for the Underlying Action.

## COUNT II

### For a Declaration that the Contract Exclusion
### <u>Precludes Coverage Under the Policy for the Underlying Action</u>

42. MAIC realleges and incorporates by reference the allegations in Paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. As explained above, no coverage is available under the Policy for any **Claim** made against an **Insured** based upon, arising from, in consequence of, or in any way related to "[a]ny actual or alleged breach of contract or agreement, express or implied, written or oral; except to the extent that the **Insured** would have been liable in the absence of the contract or agreement, or unless the liability arises out of a dispute concerning the terms of a collective bargaining agreement between an employer and the **Insured**." Policy (Ex. A), Section IV.A.6.

44. The Underlying Complaint alleges that UPFFA represented that it would only use Local 825's dues for legislative matters when in fact it used the payments for other, general purposes, in breach of an oral agreement between Local 825 and UPFFA.

45. The Underlying Complaint alleges that UPFFA has continued to charge dues even though Local 825 validly disassociated itself from UPFFA, in violation of an express or implied agreement regarding Local 825's membership in UPFFA.

46. None of the assertions in the Underlying Action arise out of a dispute over the terms of a collective bargaining agreement.

47. Accordingly, MAIC is entitled to a determination that the Contract Exclusion bars coverage under the Policy for the Underlying Action because it is a **Claim** arising out of the actual or alleged breach of an express or implied, written or oral contract.

WHEREFORE, for the reasons set forth above, MAIC respectfully requests that this Court enter a judgment in its favor:

A. Declaring that, for the reasons set forth in Count I, the Affiliate Exclusion precludes coverage under the Policy for the Underlying Action.

B. Declaring that, for the reasons set forth in Count II, the Contract Exclusion precludes coverage under the Policy for the Underlying Action.

C. Awarding MAIC such additional declaratory relief and other relief as shall be found to be appropriate under the circumstances.

D. Awarding MAIC its fees and costs incurred in prosecuting this Complaint.

Respectfully submitted,

By: /s/ Cristin E. Sheehan (CT26207)
Cristin E. Sheehan
Fed. Bar No. CT26207
MORRISON MAHONEY LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06103
Phone: (860) 616-7638
Fax: (860) 541-4883
Email: csheehan@morrisonmahoney.com

*Counsel for Markel American Insurance Company*